IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JAN 24 2012
J T NOBLIN, CLERK
BY_____DEPUTY

**DENISE TAYLOR-TRAVIS**   **PLAINTIFF**

V.   CIVIL ACTION NO. 3:12 CV 51 HTW-LRA

**JACKSON STATE UNIVERSITY**   **DEFENDANT**

## COMPLAINT
## JURY TRIAL DEMANDED

**COMES NOW** Plaintiff Denise Taylor-Travis, by and through her counsel, Louis H. Watson, Jr., P.A., and files this action against her former employer, Defendant, Jackson State University, to recover damages for violation of her rights. As more specifically set forth below, Plaintiff has been subjected to sex discrimination and retaliation in the terms and conditions of her employment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX") and the implementing regulations promulgated under Title IX; sex discrimination and retaliation in the terms and conditions of her employment in violation of Title VII of the Civil Rights Act of 1964, as amended; and state law claims of Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Invasion of Privacy.

### PARTIES

1.   The Plaintiff, Denise Taylor-Travis (Coach Taylor), is an adult female resident of Rankin County, Mississippi where she resides at 517 Windsor Drive, Brandon, MS 39047.

2. Defendant Jackson State University (JSU) is a public institution of higher education located in Jackson, MS and is the recipient of federal funding. Defendant may be served with process through the Mississippi Attorney General's Office: Jim Hood, Mississippi Attorney General, 450 High Street, Jackson, Mississippi 39201.

## VENUE

3. Venue is appropriate in the United States District Court for the Southern District of Mississippi, in that the Defendant has significant contacts within this district, the Plaintiff resided within this district at the time of the pertinent events, and the events that gave rise to this cause of action occurred in this district.

## JURISDICTION

4. This action arises under Title VII of the Civil Rights Act of 1964, as amended.

5. This action arises under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* ("Title IX") and the implementing regulations promulgated under Title IX.

6. This Court has federal question and civil rights jurisdiction for a cause of action arising under Title VII.

7. The Mississippi state law claims arise out of the same case and controversy and are therefore subject to the jurisdiction of this Honorable Court.

8. Plaintiff timely filed a complaint with the EEOC, a true and correct copy of which is attached as Exhibit "A." The EEOC issued a Right to Sue on January 12, 2012, a true and correct copy of which is attached as Exhibit "B." Plaintiff timely files this action within ninety (90) days of receipt of her Notice of Right to Sue.

## STATEMENT OF THE FACTS

9. Coach Taylor first became coach of the JSU Women's Basketball Team in 2001.

10. Subsequently, on July 1, 2010, Coach Taylor entered into a Contract, labeled "Employment Agreement," with Jackson State University to be the Head Coach of the Women's Basketball team. Said Contract is attached hereto as Exhibit "C."

11. The Contract was for a three (3) year term with a salary of Ninety-One Thousand dollars ($91,000) per annum as base salary.

12. The Contract also provided for numerous incentive-based payments in addition to the yearly salary.

13. Coach Taylor also signed a second Contract, labeled Employment Contract: Board of Trustees of State Institutions of Higher Learning which referenced her employment agreement. Said Second Contract is attached hereto as Exhibit "D."

14. Throughout her tenure as the Women's Basketball Coach, Coach Taylor was treated disparately from the male coaches and was subjected to intimidation and harassment.

15. On March 29, 2011, Coach Taylor met with Adrienne Sweeney, the Senior Woman Administrator for JSU. This meeting concerned unfair treatment, recruiting, budget, and the NCAA Women's Basketball Association annual conference (Conference). Ms. Sweeney said she was aware of some differences. When Coach Taylor asked about Title IX, Ms. Sweeney said she was not sure who the coordinator was and that the information regarding Title IX needed to be updated. Ms. Sweeney never contacted Coach Taylor after the meeting regarding the coordinator.

16. On March 30, 2011, Coach Taylor met with Robert Walker, the interim Athletic Director of two (2) months, and the business manager regarding the budget. Coach Taylor submitted a copy of a request made in January to attend the Conference. Coach Taylor had also previously met with Mr. Walker regarding unfair treatment.

17. After meeting with Mr. Walker, Coach Taylor contacted Dr. Carolyn Meyers by email regarding unequal treatment of the JSU Women's Basketball team. This unequal treatment was in violation of Title IX. *See* March 30, 2010 email from Denise Taylor-Travis to Dr. Carolyn Myers, a copy of which is attached as Exhibit "E."

18. The email requested a meeting with Dr. Meyers to express her concerns about the unfair treatment of the Women's Basketball team.

19. Dr. Myers responded, via e-mail, but the response did not entail what Coach Taylor wanted to discuss with her. Instead, the e-mail contained information received from Coach Walker who had treated Coach Taylor unfairly in the past.

20. Section 4.4(f) of Coach Myers' Contract states that "The University shall advise Head Coach if funds are available for this purpose (Women's Basketball Coaches Association annual convention) on or before February 1 of each Contract Year." Coach Myers submitted her funding request for the conference in January. She was not informed of the lack of funds until late March. This failure to inform in a timely manner further shows the complete lack of professionalism and equality of the Defendant.

21. Dr. Myers never met with Coach Taylor regarding evaluation of her program. However, Dr. Myers had met with the football coach and men's basketball coach.

22. Immediately after mailing the Title IX Complaint, President Myers dispatched Ella Holmes to audit the Women's Basketball Program. Such actions were purely retaliatory in nature, were not ordered for any other sports program, and were set in motion for the clear purpose of terminating Plaintiff.

23. On April 8, 2011, JSU placed Coach Taylor on administrative leave through a letter. Defendant's actions constituted retaliation against Coach Taylor for voicing her Title IX concerns. The letter purported "recent allegations of professional misconduct." The Defendant gave neither prior warning nor write up to Coach Taylor before this letter.

24. The letter prohibited contact with university personnel, including the coaching staff and students.

25. On April 11, 2011, Coach Taylor, through her attorney Felicia Perkins, emphatically denied any misconduct and requested all information and documentation regarding the allegations.

26. On May 13, 2011, Coach Taylor received a summary of the allegations against her.

27. The unfounded allegations included "harassment, violation of policy, misappropriation of funds, and not complying with university standards."

28. These heinous charges were simply the Defendant's attempt to divert attention from their wrongful actions.

29. A meeting also occurred on that day between Coach Taylor, her attorney, Robert Walker who was the interim athletic director, and others at JSU. JSU did not inform Coach Taylor about the nature of the meeting, or who would be in attendance.

30. It was during this meeting that Coach Taylor was informed that if she did not resign by Five (5) p.m., termination would be recommended to the President of JSU. Coach Taylor again denied the allegations and would not resign. Coach Taylor then asked for another copy of her allegations.

31. That same day, Coach Taylor received her Charge of Discrimination from the EEOC detailing her claim of sexual discrimination under Title VII.

32. On May 20, 2011, Coach Taylor received a letter informing of JSU's intent to terminate her. Again, the letter conclusory alleged "violation of University, IHL, and NCAA policies and guidelines."

33. The May 20th letter also wrongly stated that Section 6 of the contract provided for a hearing if so desired.

34. Section 6 of the contract provides for arbitration. The contract clearly states, that where a Head Coach is terminated for cause, she may request a "hearing before a panel of arbitrators." (Section 6.2).

35. The arbitration panel is to consist of three members: "one person selected by the University, one by Head Coach, and a third person agreed upon by the nominees of the party." (Section 6.3)

36. On May 26, 2011, Plaintiff's attorney sent a letter describing the meeting, the termination, and the complete lack of communication on Defendant's part.

37. The letter also pointed out the Arbitration Clause in the Contract and formally requested arbitration instead of the hearing that Defendant referenced.

38. On June 27, 2011, Defendant improperly released confidential personnel records regarding Ms. Taylor to The Clarion Ledger.

39. These actions were in clear violation of University policies and statutory law. The most serious of the documents released was the May 20 letter concerning Defendant's intent to terminate Coach Taylor. This letter included the unfounded accusations made against her.

40. University policy clearly states that personnel files, which include disciplinary notices, are to be kept confidential.

41. Furthermore, personnel files are exempt from public examination under Mississippi's Public Records Act.

42. On June 29, 2011, Defendant wrongfully terminated Coach Taylor through a letter from Mr. Walker.

43. On June 30, 2011, Attorney Felicia Perkins sent the Notice of Claim pursuant to Mississippi Code Annotated § 11-46-11, a copy of which is attached hereto as Exhibit "F."

44. On July 8, 2011, Defendant sent notice of a hearing before the Staff Grievance Committee for Coach Taylor scheduled for July 20th. The letter did not mention arbitration and the format for the hearing did not follow what was agreed upon in the Contract.

45. On July 12, 2011, Attorney Perkins contacted JSU again, attempting to clarify whether the hearing was to take the place of the Arbitration agreed upon in the Contract.

46. Plaintiff's Attorney also requested documents from Defendant and Defendant responded stating the estimated cost for this production was $15,083.24 and claimed some items were privileged. Plaintiff's Attorney responded and disagreed with

what the University labeled "privileged" and also with the excessive fee associated with the production.

47. Coach Taylor was denied Arbitration as required by the Contract. Instead, she had a hearing in front of a Staff Grievance Committee on August 30, 2011. The committee improperly and erroneously found that there were sufficient grounds to terminate Coach Taylor "with cause as defined in the JSU Staff Handbook." Coach Taylor was not given the Due Process required by her Contract. The denial of Arbitration clearly shows the Defendant's reckless disregard for policy and blatant refusal to abide by the Contract entered into with Coach Taylor.

48. Defendant discriminated against Coach Taylor in violation of Title IX and Title VII. Defendant then wrongfully terminated Coach Taylor in retaliation for her reporting said discrimination. Furthermore, Defendant breached both Contracts entered into with Coach Taylor. Defendant then made heinous and unwarranted allegations against Coach Taylor to cover up these discriminatory and retaliatory actions.

## CAUSES OF ACTION

### COUNT I. – VIOLATION OF TITLE VII – SEX DISCRIMINATION/RETALIATION

49. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 48 above as if fully incorporated herein.

50. Defendant, acting by and through its agents and employees, has intentionally engaged in gender discrimination and retaliation made unlawful by Title VII.

51. The unlawful actions of the Defendant complained of above were intentional, malicious, and taken in reckless disregard for the statutory rights of the Plaintiff.

52. As direct and proximate result of Defendant's unlawful gender discrimination and retaliation, Coach Taylor suffered and continues to suffer lost earnings and benefits, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, and inconvenience.

## COUNT II. – VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681, et. seq. -- SEX DISCRIMINATION/RETALIATION

53. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 52 above as if fully incorporated herein.

54. Defendant, acting by and through its agents and employees, has intentionally engaged in gender discrimination and retaliation made unlawful by Title IX.

55. As direct and proximate result of Defendant's unlawful gender discrimination and retaliation, Coach Taylor suffered and continues to suffer lost earnings and benefits, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, and inconvenience.

## COUNT III. – BREACH OF CONTRACT

56. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 55 above as if fully incorporated herein.

57. Defendant, acting by and through its agents and employees, did knowingly, willfully, and intentionally breach both employment contracts entered into with Coach Taylor.

58. Prior to Defendant's breach of contract, Coach Taylor complied with and performed all the conditions imposed upon her by the Contracts.

59. Through its wrongful termination of Coach Taylor, Defendant has completely failed to perform the obligations imposed upon it by the Contracts.

60. As direct and proximate result of Defendant's breach, Coach Taylor suffered and continues to suffer lost earnings and benefits, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, and inconvenience.

## COUNT IV. – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

61. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 60 above as if fully incorporated herein.

62. Defendant, upon entering into the Contracts with Coach Taylor, undertook a separate duty of good faith and fair dealing in the performance of the Contracts with Coach Taylor, including duties of honesty and fairness in the observance of reasonable standards and to avoid deception of any kind in its performance of the Contracts with Coach Taylor.

63. Defendant breached its duty of good faith and fair dealing with Coach Taylor in the performance of its Contracts by discriminating against her under Title VII and Title IX, and wrongfully terminating her in retaliation for reporting the Title IX violations.

64. As direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Coach Taylor suffered and continues to suffer

lost earnings and benefits, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, and inconvenience.

## COUNT VII. – INVASION OF PRIVACY

65. Plaintiff re-alleges and incorporates all averments set forth in paragraphs 1 through 64 above as if fully incorporated herein.

66. Defendant, acting by and through its agents and employees, did knowingly, willfully, and intentionally release confidential documents in violation of both University policy and the Mississippi Public Records Act.

67. The release of these documents constitutes an invasion of Coach Taylor's privacy by the University.

68. As direct and proximate result of Defendant's invasion of privacy, Coach Taylor suffered and continues to suffer lost earnings and benefits, emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, and inconvenience.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED, PLAINTIFF RESPECTFULLY PRAYS** that the Court cause service to issue in this cause upon the Defendant and that this matter be set for trial. Upon trial by jury thereon, Plaintiff prays that the following relief be granted:

1. Judgment against JSU, for actual damages sustained by Coach Taylor as alleged herein;

2. Pre-judgment interest at the highest legal rate;

3. Post-judgment interest at the highest legal rate;

4. Back-Pay;

5. Reinstatement, or, in lieu of reinstatement, Front-Pay;

6. Compensatory Damages;

7. Damages for mental pain and mental anguish;

8. Declare that JSU's conduct is in violation of Title VII and Title IX;

9. Enforcement of both Contracts attached hereto as Exhibit C and Exhibit D;

10. Attorney's Fees

11. All costs of court expended herein; and

12. Such further relief as is deemed just and proper.

THIS the 24th day of January, 2012.

         Respectfully submitted,
         DENISE TAYLOR-TRAVIS, PLAINTIFF


         By: _/s/ Louis H. Watson, Jr._____
         Louis H. Watson, Jr. (MB# 9053)
         Nick Norris (MB# 101574)
         Attorneys for Plaintiff


OF COUNSEL:

LOUIS H. WATSON, JR., P.A.
628 North State Street
Jackson, Mississippi 39202
Telephone: (601) 968-0000
Facsimile: (601) 968-0010
Email: louis@louiswatson.com
Web: www.louiswatson.com
    www.msemploymentlaw.com