**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

**DENISE TAYLOR-TRAVIS**                                                      **PLAINTIFF**

**vs.**                                    **CIVIL ACTION No.: 3:12-CV-51-HTW-LRA**

**JACKSON STATE UNIVERSITY**                                          **DEFENDANT**

## ORDER REGARDING POST-TRIAL MOTIONS

BEFORE THIS COURT are the following post-trial motions: Jackson State University's Joint Motion for Judgment as a Matter of Law **[Docket no. 67]** [1]; Denise Taylor-Travis's Motion for New Trial **[Docket no. 70]**; and Jackson State University's Motion to Stay Proceedings Regarding Plaintiff's Bill of Costs **[Docket no. 74]**.

This court has reviewed the submissions of the parties, arguments of counsel, and the relevant jurisprudence. As a result, this court is persuaded that Jackson State University's Joint Motion for Judgment as a Matter of Law **[Docket no. 67]** is due to be DENIED. This court is further persuaded that Denise Taylor-Travis's Motion for New Trial **[Docket no. 70]** is due to be DENIED. Finally, this court is persuaded that Jackson State University's Motion to Stay Proceedings Regarding Plaintiff's Bill of Costs **[Docket no. 74]** is MOOT and due to be DENIED. The reasoning of this court is set out below.

## I.  JURISDICTION

This lawsuit has taken many twists and turns[2] on its road to resolution. This court is thoroughly familiar with the facts and the procedural history of this matter. That does not mean,

---

[1] While JSU styled its motion *Joint Motion for Judgment as a Matter of Law (Renewed) or, In the Alternative, Motion for a New Trial or a Remittitur*, the motion is opposed by Coach Taylor. Therefore, this motion should have omitted the word "Joint" from its style because that word implies that the opposing party is in agreement with the motion.

[2] After the jury verdict in this lawsuit, and the subsequent filing of post-judgment motions, the parties informed the court that they had achieved a mutually agreeable settlement that only required the approval of the Institute of Higher Learning (hereinafter referred to as "IHL"). IHL rejected the settlement agreement based on various grounds, among

however, that this court will not discuss what it has already discussed in previous orders it has issued in this matter.

This court earlier held that it possesses federal question subject-matter jurisdiction over this litigation. *See* [Docket no. 64, attached as an exhibit to this Order]. The plaintiff, Denise Taylor-Travis (hereinafter referred to as "Coach Taylor") filed this lawsuit alleging that her previous employer, defendant Jackson State University (hereinafter referred to as "JSU"), had violated her rights by discriminating against her in violation of Title VII of the Civil Rights Act of 1964, Title 42 U.S.C. § 2000e, *et seq.*[3], and Title IX of the Education Amendments, Title 20 U.S.C. § 1681, *et seq.*[4] Coach Taylor also alleged under state law that JSU had breached her contract and the implied covenant of good faith and fair dealing. Finally, Coach Taylor alleged, also under state law, that JSU had invaded her privacy when it released allegedly confidential records to the press.

Since Coach Taylor alleges violations of her civil rights under the Civil Rights Act, a federal enactment, this court has federal question subject matter jurisdiction under the authority of

---

them the recommendation of JSU's administration. JSU has changed its administration since then and this court asked the parties to discuss the new administration's view of a settlement in this matter. This court also asked the United States Magistrate Judge assigned to this matter to communicate with the parties regarding their discussions with JSU's new administration. The Magistrate Judge did not do so. The parties later let this court know that the position of JSU's administration has not changed and that it still rejects the settlement agreement. This court then returned this lawsuit to its active docket to resolve these outstanding post-judgment motions.

[3] (a) Employer practices – It shall be an unlawful employment practice for an employer –

   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C.A. § 2000e-2 (West)

[4] (a) Prohibition against discrimination; exceptions No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance….

20 U.S.C.A. § 1681 (West)

Title 28 U.S.C. § 1331[5]. This court also finds that it possesses supplemental jurisdiction over Coach Taylor's state law claims by the authority of Title 28 U.S.C. § 1367.[6]

## II.    PROCEDURAL HISTORY

Coach Taylor filed her complaint on January 24, 2012. [Docket no. 1]. JSU filed its Answer on March 15, 2012. [Docket no. 5]. On October 30, 2013, this court commenced a jury trial on Coach Taylor claims for: retaliation under Title VII; retaliation under Title IX; breach of contract; and breach of the implied covenant of good faith and fair dealing.

In the pretrial order, the parties stipulated that the jury would determine liability on the federal claims only, and the court would rule on the invasion of privacy claim. The parties also stipulated that the court later would determine whether the remaining state law claims would be

---

[5] The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C.A. § 1331 (West)

[6] (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

    (1) the claim raises a novel or complex issue of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.(d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

(e) As used in this section, the term "State" includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

28 U.S.C.A. § 1367 (West)

submitted to the jury or be decided by this court at a subsequent date. [Docket no. 54]. This court thereafter, without objection, ruled that it would submit all of Coach Taylor's claims to the jury with the exception of the invasion of privacy claim.

After sixteen (16) days of trial, the jury returned a verdict in this matter. The jury found, based on the evidence presented at trial, that JSU had not terminated Coach Taylor because of her gender; nor had JSU terminated Coach Taylor in retaliation for engaging in protected activity under Title VII or Title IX. The jury, however, determined that JSU had breached Coach Taylor's employment contract and the implied covenant of good faith and fair dealing. As a result of that finding, the jury awarded Coach Taylor $182,000.00.[7]

This court subsequently decided the invasion of privacy claim in favor of Coach Taylor. [Docket no. 64]. In so doing, this court awarded Coach Taylor $200,000.00 in compensatory damages, but declined awarding pecuniary damages. [Docket no. 64, P. 20]. This court entered a Judgment on Jury and Bench Verdict on August 1, 2014. [Docket no. 65].

On August 29, 2014, JSU filed its misnamed Joint Motion for Judgment as a Matter of Law. **[Docket no. 67]**[8]. Contemporaneously, JSU filed its Memorandum in Support. [Docket no. 68]. Coach Taylor filed her response in opposition on September 15, 2014. [Docket no. 75]. On September 25, 2014, JSU filed its reply to the response filed by Coach Taylor. [Docket no. 81].

On August 29, 2014, Coach Taylor filed her Motion for New Trial without a supporting memorandum brief. **[Docket no. 70]**. On September 4, 2014, JSU filed its response in opposition

---

[7] The $182,000.00 represents the salary that Coach Taylor would have earned had JSU not breached the contract and allowed her to remain on staff, completing the last two (2) years of her employment contract. Although the jury found that JSU had breached the implied covenant of good faith and fair dealing, the jury refused to award her compensatory damages.

[8] See footnote 1 *supra*.

to Coach Taylor's motion for a new trial. [Docket no. 71]. Coach Taylor then filed her reply to JSU's response on September 15, 2014. [Docket no. 77].

On August 29, 2014, Coach Taylor filed her bill of costs in this matter. [Docket no. 69]. JSU objected to the bill of costs on September 4, 2014 without a supporting memorandum brief. [Docket no. 72]. On the next day, September 5, 2014, JSU filed its Motion to Stay Proceedings Regarding Plaintiff's Bill of Costs. **[Docket no. 74]**.

### III.    FACTUAL BASIS

This court on an earlier day set out the facts of this lawsuit as found by this court and the jury during the joint jury and bench trial. [Docket no. 64]. Therefore, this court adopts the recitation of the statement of facts from this court's order dated August 1, 2014. [Docket no. 64, PP. 3-10].

### IV.    DISCUSSION

a. *Joint Motion for Judgment as a Matter of Law (Renewed) or, In the Alternative, for a New Trial or a Remittitur* **[Docket no. 67]**

In its Joint Motion for Judgment as a Matter of Law (Renewed) or, In the Alternative, for a New Trial or a Remittitur **[Docket no. 67]**, JSU asks this court to set aside the jury verdict against it. The crux of JSU's arguments regarding the breach of contract award are threefold: that Coach Taylor failed to present evidence by which a jury reasonably could have found a breach of contract claim in her favor; that this court should have heard the breach of contract claim as a bench trial because Coach Taylor alleged a tortious breach of contract claim, not a simple breach of contract claim; and that the jury instructions that this court denied should have been granted.

JSU also argues that this court erred in ruling that JSU was liable for invasion of privacy because Coach Taylor failed to make a *prima facie* case of invasion of privacy and that Coach Taylor failed to present competent evidence of her damages for invasion of privacy.

Finally, JSU argues that the following alleged errors combined to preclude it from receiving a fair trial: the court's examination of witnesses; and Coach Taylor's references and arguments about JSU's refusal to arbitrate.

### i. Standard of Review

JSU submits its motion for a new trial under the authority of Rule 50(b)[9] of the Federal Rules of Civil Procedure. Rule 50(b) allows a party to renew a previously-raised motion for judgment as a matter of law that the court denied. The party, within 28 days of the jury verdict or the bench opinion, may file its renewed motion for judgment as a matter of law. In the lawsuit *sub judice*, this court issued the final judgment based on both the jury and bench trial verdicts on August 1, 2014. JSU filed its Joint Motion for Judgment as a Matter of Law on August 29, 2014, exactly 28 days after this court had issued its judgment.

---

[9] (a) Judgment as a Matter of Law.

> (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>
> > (A) resolve the issue against the party; and
> >
> > (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue…

(b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment--or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged--the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:

> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

(c) Granting the Renewed Motion; Conditional Ruling on a Motion for a New Trial.

> (1) In General. If the court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed. The court must state the grounds for conditionally granting or denying the motion for a new trial....

(d) Time for a Losing Party's New-Trial Motion. Any motion for a new trial under Rule 59 by a party against whom judgment as a matter of law is rendered must be filed no later than 28 days after the entry of the judgment…

Fed. R. Civ. P. 50

JSU also campaigns that Rule 59(a)[10] of the Federal Rules of Civil Procedure provides procedural support for its motion for a new trial. The standard under Rule 59 is:

> A motion for new trial under Rule 59(a) is an extraordinary remedy that should be used sparingly. Rule 59(a) provides, specifically, that the district court may grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Although Rule 59(a) does not delineate the precise grounds for granting a new trial, the Fifth Circuit has held that Rule 59(a) allows the district court to grant a new trial if it "finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." Still, the decision whether to grant a new trial under Rule 59(a) is left to the sound discretion of the trial judge, and the court's authority is broad.

*Howard v. Offshore Liftboats, LLC*, 2016 WL 3536799, at *4 (E.D. La. June 28, 2016).

### ii.    Waiver of Issues

At the pretrial conference in this matter, the parties submitted a Pretrial Order, which they had signed in accordance with Rule 16(e) of the Federal Rules of Civil Procedure[11] and the Local

---

[10] (a) In General.

> (1) Grounds for New Trial. The court may, on motion, grant a new trial on all or some of the issues--and to any party--as follows:
>
>> (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court; or
>>
>> (B) after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court.
>
> (2) Further Action After a Nonjury Trial. After a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

(b) Time to File a Motion for a New Trial. A motion for a new trial must be filed no later than 28 days after the entry of judgment.

(c) Time to Serve Affidavits. When a motion for a new trial is based on affidavits, they must be filed with the motion. The opposing party has 14 days after being served to file opposing affidavits. The court may permit reply affidavits.

(d) New Trial on the Court's Initiative or for Reasons Not in the Motion. No later than 28 days after the entry of judgment, the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. In either event, the court must specify the reasons in its order.

(e) Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.

Fed. R. Civ. P. 59

[11] (e) Final Pretrial Conference and Orders. The court may hold a final pretrial conference to formulate a trial plan, including a plan to facilitate the admission of evidence. The conference must be held as close to the start of trial as is reasonable, and must be attended by at least one attorney who will conduct the trial for each party and by any

Rules of Civil Procedure for the Southern District of Mississippi Rule 16(j)[12]. The Fifth Circuit recognizes that the final pretrial order governs the manner of the proceedings at trial.

_____

unrepresented party. The court may modify the order issued after a final pretrial conference only to prevent manifest injustice.

Fed. R. Civ. P. 16

[12] (j) Final Pretrial Conferences And Pretrial Orders

(1) Cases in Which Conference to be Held; Scheduling; Role of Magistrate Judge. A final pretrial conference is to be held in all civil actions, subject only to the exceptions hereinafter noted.

(A) The judicial officer assigned to try the case will attempt to conduct the pretrial conference. If the judicial officer is unable to schedule the pretrial conference in a timely manner, however, then he or she may direct that the conference be held before another judicial officer. This conference will be scheduled not more than forty-five days prior to trial.

(B) Whenever possible, a final pretrial conference will be separately scheduled at a date, place, and hour and for such period of time as the subject matter of the particular civil action may require, but in all events a final pretrial conference will be scheduled in such manner as not to cause undue or inordinate inconvenience to counsel scheduled for final pretrial conferences in other cases.

(2) When Conference May be Dispensed With; Pretrial Order Still Required; Contents. The court recognizes that a formal final pretrial conference may not be needed in all cases. The court, either on its own motion or by request of the parties made not later than fourteen days before the scheduled conference, may determine that a final pretrial conference is unnecessary and excuse the parties from attendance, but in that event the jointly agreed pretrial order must be submitted to the judge before whom the conference was to have been held and all requirements of this rule must be complied with at or before the time and date set for the final pretrial conference, unless the judge fixes another date for submission of the pretrial order. If no formal final pretrial conference is held, counsel must submit to the appropriate judge a jointly agreed final pretrial order [Official Form No. 3] which must set forth:

(A) Any jurisdictional question.

(B) Any questions raised by pending motions, including motions in limine.

(C) A concise summary of the ultimate facts claimed by plaintiff(s), by defendant(s), and by all other parties.

(D) Facts established by pleadings or by stipulations or admissions of counsel.

(E) Contested issues of fact.

(F) Contested issues of law.

(G) Exhibits (except documents for impeachment only) to be offered in evidence by the parties respectively. If counsel cannot in good faith stipulate the authenticity or admissibility of a proposed exhibit, the order must identify the same and state the precise ground of objection.

(H) The names of witnesses for all parties, stating who Will Be Called in the absence of reasonable notice to opposing counsel to the contrary and who May Be Called as a possibility only. Neither rebuttal nor impeachment witnesses need be listed. The witness list must state whether the witness will give fact or expert testimony, or both, whether the witness will testify as to liability or damages, or both, and whether the witness will testify in person or by deposition.

(I) Any requested amendments to the pleadings.

(J) Any additional matters to aid in the disposition of the action.

(K) The probable length of the trial.

(L) Full name, address, and phone number of all counsel of record for each party.

(3) Submission by Magistrate Judge to Trial Judge. If the pretrial conference is held before a magistrate judge who will not try the case, the magistrate judge will submit the agreed, approved pretrial order to the trial judge, with copies to counsel and to the clerk of court.

(4) Duty of Counsel to Confer; Exhibits; Matters to be Considered at Conference; Sanctions. The following provisions of this rule apply, regardless of whether the pretrial order is entered by stipulation of the parties or following a formal final pretrial conference:

(A) Counsel must resolve by stipulation all relevant facts that are not in good faith controverted and must exchange with counsel for all other parties true copies of all exhibits proposed to be offered in

evidence, other than those to be used for impeachment purposes only, and must stipulate the authenticity of each exhibit proposed to be offered in evidence by any party unless the authenticity of any such exhibit is in good faith controverted.

(B) All exhibits are to be pre-marked, and lists briefly describing each are to be exchanged among counsel and presented to the court at the beginning of the trial, in quadruplicate, unless otherwise directed by the court.

(C) At any formal final pretrial conference, the judge will confer with counsel regarding proposed stipulations of facts and contested issues of fact and law, and will inquire as to the reasonableness of any party's failure to stipulate or agree as to the authenticity or admissibility of exhibits. If the court determines that any party or his attorney has failed to comply with this rule, such party or his attorney will be subject to appropriate sanctions.

(5) Depositions. Depositions to be introduced in evidence other than for rebuttal or impeachment purposes must be abridged before the pretrial conference or submission of the order, as follows:

(A) The offering party must designate by line and page the portions of the deposition it plans to offer.

(B) The opposing party or parties must designate by line and page any additional portions of the deposition to be offered and must identify distinctly any portions of the deposition previously designated by any other party to which objection is made.

(C) The offering party must thereafter identify distinctly any portions of the deposition previously designated by any other party to which objection is made.

(D) Videotaped depositions must be edited before trial as required by the pretrial order.

(6) Procedure at Final Pretrial Conference. In addition to the preceding provisions, the following provisions apply to the formulation of a pretrial order by formal conference before the magistrate judge, or in any appropriate case, the district judge.

(A) Counsel Must Attend; Sanctions. All scheduled conferences must be attended by counsel of record who will participate in the trial and who have full authority to speak for the party and enter into stipulations and agreements. Counsel must have full authority from their clients with respect to settlement and must be prepared to inform the court regarding the prospects of settlement. The court may require the attendance or availability of the parties, as well as counsel. Should a party or his attorney fail to appear or fail to comply with the directions of this rule, an ex parte hearing may be held and a judgment of dismissal or default or other appropriate judgment entered or sanctions imposed.

(B) Preparation for the Conference. Counsel must comply with the requirements of subdivisions (j)(4) and (j)(5) of this rule as soon as practicable before the pretrial conference and submit to the court and counsel opposite a proposed pretrial order setting forth his proposals for inclusion in the pretrial order in accordance with subdivision (j)(2) of this rule and any instructions which the court may in its discretion issue.

(C) Preparation of the Pretrial Order. After the final pretrial conference has concluded, a pretrial order must be prepared by counsel in conformity with Official Form No. 3 and submitted to the court for entry. Responsibility for preparation of the pretrial order and the deadline for its submission will be fixed by the judicial officer before whom the conference was held. If a magistrate judge has conducted the conference on behalf of a district judge, he or she will require counsel to make such corrections as the magistrate judge deems necessary before transmitting the order to the district judge.

(D) Additional Conferences. After the final pretrial conference has been conducted, the court will not hold an additional pretrial conference except in those exceptional situations in which the judicial officer determines that an additional conference would materially benefit disposition of the action.

(7) Effect of Pretrial Order. The pretrial order controls the subsequent course of the action unless modified by the trial judge at or before the trial, upon oral or written motion, to prevent manifest injustice.

(8) Conference Scheduling; Conflicting Settings. In scheduling all pretrial conferences of any nature, the judge will give due consideration to conflicting settings but not to the mere convenience of counsel. If a scheduling order has been entered in an action, no final pretrial conference will be held until after the discovery deadline has expired. Failure to complete discovery within such deadline is not an excuse for delaying the final pretrial conference nor for securing continuance of a case which has been calendared for trial.

It is a well-settled rule that a joint pretrial order signed by both parties supersedes all pleadings and governs the issues and evidence to be presented at trial." *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 206 (5th Cir.1998) (quoting *Branch–Hines v. Hebert*, 939 F.2d 1311, 1319 (5th Cir.1991)). Claims, issues, and evidence are narrowed by the pretrial order, thereby focusing and expediting the trial. *Elvis*, 141 F.3d at 206 (claims not preserved in a joint pretrial order were waived); *Branch–Hines*, 939 F.2d at 1319 (the pretrial order asserted the plaintiff's full range of damages). If a claim or issue is omitted from the final pretrial order, it may be waived, even if it appeared in the complaint. *Elvis*, 141 F.3d at 206.

*Martin v. Lee*, 378 F. App'x 393, 395 (5th Cir. 2010).

The parties' pretrial order that they prepared and signed was submitted to this court on October 16, 2013: signed by this court on October 23, 2013: and entered on the record on December 6, 2013. [Docket no. 54]. In the pretrial order the parties submitted to this court, the parties agreed that:

4.  The following claims have been filed by the Plaintiff:
    a.  Plaintiff asserts claims for violation of Title VII – Sex Discrimination/Retaliation and violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. – Sex Discrimination/Retaliation, *Breach of Contract*, Breach of Implied Covenant of Good Faith and Fair Dealing and Invasion of Privacy.

[Docket no. 54, P. 2, ¶ 4, *RESTRICTED*].

As an initial matter, this court finds that several of JSU's issues that it raised in its Joint Motion for Judgment as a Matter of Law **[Docket no. 67]** were waived by the Pretrial Order dated October 28, 2013. This court has thoroughly reviewed the pretrial order and finds that JSU did not assert that Coach Taylor had claimed a tortuous breach of contract cause of action in her complaint. Moreover, this court finds that JSU did not assert that Coach Taylor was a public figure, a disputed fact that would influence the factual determination of the ultimate trier of fact in this matter. This

---

(9) Discretion of District Judge. Notwithstanding any of the provisions of this rule to the contrary, a district judge may, in his or her discretion, in any assigned case, conduct any or all pretrial conferences and may enter or modify a scheduling order.
L.U.Civ.R. 16 (as effective April 30, 2013)

court is persuaded that it need not reach the issues raised by JSU as JSU has waived these issues in the pretrial order: however, this court will address all of JSU's contentions below.

### iii. Breach of Contract

To establish a breach of contract under Mississippi law, the plaintiff must show: "(1) the existence of a valid and binding contract; (2) breach of the contract by the defendant; and (3) money damages suffered by the plaintiff." *Guinn v. Wilkerson*, 963 So. 2d 555, 558 (Miss. Ct. App. 2006)(Quoting *Favre Prop. Mgmt., LLC v. Cinque Bambini*, 863 So.2d 1037, 1044(¶ 18) (Miss.Ct.App.2004)).

### A. Existence of a Valid and Binding Contract

Both parties point to a contract between them, a contract each contends was valid and binding under Mississippi law. The two parties, each capable of entering a contract, negotiated and formed a contract in 2001, which was renewed on July 1, 2010, with each committed to complete certain obligations. Under this contract, Coach Taylor was to perform as the head coach for JSU's female basketball team, while JSU was to provide support for Coach Taylor and pay her an annual salary. The contract at issue here covered the period of July 1, 2010, through June 30, 2013. JSU terminated the contract in June, 2011.

### B. Breach

Coach Taylor contends that JSU, without just cause, breached this contract, to wit, by terminating her contract when she had done nothing wrong, or alternatively, other coaches had acted the same and were not reprimanded for doing so; a fact which Coach Taylor says is further proof that she was doing nothing wrong. At trial, Coach Taylor called a number of witnesses on this claim and also offered her own testimony.

Her proof of breach, summarized, provided as follows: that the male football coaches utilized their expenses the same way that she had; and that she had been a kind and caring coach for the student athletes under her care.

JSU, in response, alleges that it did not breach the valid and binding employment contract it had with Coach Taylor. According to JSU, it had a valid "for cause" reason to terminate the contract early: Coach Taylor, says JSU, was terminated for misappropriations of funds and, additionally, for mistreatment of students. JSU claims that at trial Coach Taylor did not refute the evidence on these points.

To JSU's volley, Coach Taylor fires back that at trial she had presented overwhelming evidence that other coaches had committed the same acts of which she was accused and were not terminated; therefore, she argues, JSU's reasons for terminating her for such acts must be pre-textual. *See Dodge v. Hertz Co.* 124 Fed.App'x 242 (5th Cir. 2005)(Citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212 (5th Cir.2001)). Coach Taylor showed at trial that prior to the time period leading up to her termination, she had never been warned that any such acts were illegal, either orally or by any written directive; nor had she been administratively challenged as to her method of recording funds and accounting for same.

Further, Coach Taylor asserts that at trial she presented evidence which refuted the abuse allegations of the students; her evidence, she says, showed her to be a caring and thoughtful coach. *See* [Docket no. 64].

JSU cites *Hoffman v. Board of Trustees*, 567 So.2d 838 (Miss. 1990), in an effort to negate Coach Taylor's argument on pretext, an argument which relies upon "comparisons." Hoffman was the Vocational Director for East Mississippi Junior College (hereinafter referred to as "EMJC"), from 1974 until his termination on September 24, 1987. EMJC renewed Hoffman's employment

contract as recently as June 26, 1987, by extending his contract for one (1) year. After Hoffman's contract had been renewed, James B. Moore became the new President of EMJC, starting on September 16, 1987. When Moore commenced work in his new office, employees of EMJC notified him about Hoffman's deficiencies as Vocational Director. Moore attempted to reassign Hoffman, but the other employees resisted Hoffman's transfer to their departments. Moore subsequently learned that Hoffman was inappropriately handling college funds. As a result, Moore terminated Hoffman's employment and contract on September 24, 1987 citing various causes for his termination.[13]

The Mississippi Supreme Court, which affirmed the dismissal of Hoffman's lawsuit by the Chancery Court of Kemper County, Mississippi, explained its decision as follows:

> It is true that Hoffman was a long-time employee of EMJC and that as recently as June 26, 1987, the Board of Trustees had tendered him a new contract covering the year ending June 30, 1988. On the other hand, the record reflects that his performance had been sub-standard for quite some time. The fact that a school district tolerates sub-standard performance under circumstances such as these hardly constitutes a waiver of the district's prerogative to rely on just cause when it exists and terminate an employment contract. The question is whether Hoffman is in substantial breach of material features of his contract, not how long this has been so, nor whether his employer has failed to act upon similar past deficiencies.

*Hoffman*, at 842. This court notes that *Hoffman* did not involve, as the lawsuit *sub judice* does, comparing the malfeasance of one employee with another. To the contrary, *Hoffman* involved an employer who did nothing about one employee's misbehavior for years, and then finally acted upon that employee's own misdeeds when a new president began his own employment. Thus, *Hoffman* stands for the proposition that an employer may terminate its employee for cause even

---

[13] Hoffman was terminated for: lack of necessary leadership ability; improper handling of funds; refusal to accept reassignment; lack of dedication and professionalism; lack of academic qualifications; questionable use of school automobile; improper use and supervision of school personnel; excessive absences from post during the day; failure to establish acceptable financial accounting system; and failure to take necessary actions to maintain enrollment.

where it had ignored that employee's malfeasance for years. This court is not persuaded by the arguments of JSU that *Hoffman* will provide it relief in the form of a judgment as a matter of law.

JSU further campaigns that "all that matters is whether Jackson State had a good faith belief that Taylor had violated her contractual obligation to promote student well-being." [Docket no. 68, P. 6]. JSU cites a New Jersey Supreme Court case, *Cf. Silvestri v. Optus Software, Inc.*, 814 A. 2d 602 (N.J. 2003), which interpreted New Jersey's employment contract law in finding that "such contracts generally are governed by a subjective standard." [Docket no. 68, P. 6].

The Fifth Circuit, however, has spoken on this same matter:

> An employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection. (recognizing that *McDonnell Douglas* does not preclude an employer from relying on subjective reasons for its personnel decisions); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir.2000) ("It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation."). Such a reason will satisfy the employer's burden of production, however, only if the employer articulates a clear and reasonably specific basis for its subjective assessment. *See Burdine*, 450 U.S. at 258, 101 S.Ct. 1089; *Patrick*, 394 F.3d at 316–17; *see also Chapman*, 229 F.3d at 1034 ("A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."); *EEOC v. Target Corp.*, 460 F.3d 946, 957–58 (7th Cir.2006) (agreeing with the Eleventh Circuit that "an employer must articulate reasonably specific facts that explain how it formed its [subjective] opinion of the applicant in order to meet its burden under *Burdine*").

*Alvarado v. Texas Rangers*, 492 F.3d 605, 616–17 (5th Cir. 2007).

This court is persuaded then that an employer, JSU here, may articulate a clear and reasonably subjective basis for its termination of an employee which would not be discriminatory. While this standard is not materially different than that cited by JSU, this court felt it important to cite to binding precedent within the Fifth Circuit.

In the lawsuit at bar, JSU presented evidence of its alleged reasons for terminating Coach Taylor's employment contract: Coach Taylor allegedly violated JSU's reimbursement policy; Coach Taylor allegedly misappropriated funds; and allegedly violated JSU's policy by sexual gender stereotyping, verbal abuse, and emotional abuse of the student athletes for whom she was responsible.

This court is not persuaded, though, that JSU is entitled to judgment as a matter of law or to a new trial based on these grounds. Take the reimbursement policy matter. JSU said that Coach Taylor used the team's expense account for her personal expenses, an action which it contends was unlawful and in violation of her employment contract. Coach Taylor responded that all the coaches acted the same way toward the expense accounts of their respective teams and that no one had ever been reprimanded orally or in writing, nor terminated for doing so, nor advised by JSU that such conduct allegedly was unlawful. The jury, which attentively heard all of the evidence, obviously sided with Coach Taylor.

Next is the misappropriation-of-funds basis for terminating Coach Taylor. JSU contended again at trial that Coach Taylor utilized the funds JSU had designated for team expenditures for her personal use, again, an action which JSU contends was unlawful and in violation of her employment contract. Coach Taylor's proof purported to show, once more, that JSU's administrative body had never taken action against any other coach for acting the same way. Similarly, Coach Taylor purported to show at trial that she had not been the recipient of prior warnings, oral or written, relative to her conduct in this manner. The jury accepted Coach Taylor's position; otherwise, on the court's instructions to the jury, that body of fact finders would have found for JSU.

Then, there are the sexual harassment claims not even mentioned by JSU in its closing arguments. JSU contended that Coach Taylor had discriminated against one of her student athletes because that student was a lesbian. For proof, JSU presented that student athlete who testified that Coach Taylor had inquired of her teammates about that student's sexual orientation and had inquired of that student directly about a domestic violence incident in which that student had been involved. Coach Taylor responded by stating that her inquiries were directed at finding out whether that student athlete was in an abusive relationship, regardless of the sexual orientation of that relationship. JSU also contended that Coach Taylor had inquired about a different student athlete who was "teasing" two (2) of her teammates. Coach Taylor contended that her inquiry was solely to stop a potential love triangle, a circumstance that could cause dissention in the team.

In sum, the jury could have found, as indeed it did, based on the evidence presented, that JSU had intentionally breached its contract with Coach Taylor by terminating her contract early and without good cause to do so.

iv.     Bench Trial on Breach of Contract Claim

JSU next argues that it is due a new trial because this court should not have submitted Coach Taylor's breach of contract claim to the jury[14]; instead, says JSU, this court should have heard the breach of contract claims as a bench trial under the authority of the Mississippi Tort Claims Act[15] (hereinafter referred to as "MTCA").

---

[14] As the court stated *supra*, the parties agreed in the pre-trial order that:

> This is a jury case with respect to Plaintiff's federal claims only. This is a bench trial with respect to the Plaintiff's state law claims of invasion of privacy. The Court will determine whether it is a bench trial as to Plaintiff's remaining state law claims.

[Docket no. 54, P. 22, ¶ 14, *RESTRICTED*].

This court later ruled, without objection, that this court would submit all of the state law claims to the jury.

[15] (1) Jurisdiction for any suit filed under the provisions of this chapter shall be in the court having original or concurrent jurisdiction over a cause of action upon which the claim is based. The judge of the appropriate court shall hear and determine, without a jury, any suit filed under the provisions of this chapter. Appeals may be taken in the manner provided by law.

Although the MTCA does not apply to "pure contract actions," it does apply to claims for tortious breach of contract: "The clear intent of the [L]egislature in enacting [the MTCA] was to immunize the State and its political subdivisions from any tortious conduct, including tortious breach of ... contract."

*Papagolos v. Lafayette Cty. Sch. Dist.*, 972 F. Supp. 2d 912, 932 (N.D. Miss. 2013), *amended on reconsideration* (Nov. 13, 2013)(Citing *City of Grenada v. Whitten Aviation, Inc.*, 755 So.2d 1208, 1213 (Miss.Ct.App.1999)). "Tortious breach of contract requires, in addition to a breach of contract, some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort." *Morris v. CCA of Tennessee, LLC*, No. 3:15-CV-00163-MPM-RP, 2017 WL 2125829, at *2 (N.D. Miss. May 16, 2017)(Citing *Southern Natural Gas Co. v. Fritz*, 523 So.2d 12, 19-20 (Miss. 1987)). As this court has discussed *supra*, JSU waived this argument by not including it in the pretrial order that they assented to and signed. This court will address JSU's contention nonetheless.

JSU argues that "[w]hat type of breach of contract claim is at issue is determined by what a party has alleged and argued, not by what the party represents in an effort to avoid MTCA's bench trial requirement." *See Whiting v. U. of Southern Miss.*, 62 So.3d 907, 915 (Miss. 2011). The *Whiting* opinion is relatively sparse when it discusses why the court found that the plaintiff's claims were a tortious breach of contract instead of simple breach of contract.[16]

A review of the facts of *Whiting* shows that Dr. Melissa Whiting alleged that while she was a tenure track assistant professor at the University of Southern Mississippi, the Board of Trustees renewed her contract six (6) times. Dr. Whiting received, as all professors did, a Faculty Handbook

MISS. CODE. ANN. § 11-46-13 (West)

[16] "At the core, Dr. Whiting's argument, to the extent that it makes out a specific claim for relief, is that her contract with the Board, as memorialized in the handbook, guaranteed a fair and impartial hearing with respect to her tenure application, and the defendants denied her that opportunity. While she attempts to characterize these claims as breach of contract, a fair reading of the facts of this case and the manner in which Dr. Whiting lays out her argument establish that if there were a claim to be made, it would be for tortious breach of contract and tortious interference with contract." *Whiting v. Univ. of S. Mississippi*, 62 So. 3d 907, 915 (Miss. 2011).

which laid out the procedures for obtaining tenure. One of the major factors the Board of Trustees would consider in granting tenure was the annual evaluations of the professor. Dr. Whiting received five (5) annual evaluations which reflected she received top marks in all categories. When Dr. Whiting applied for tenure, her department head allegedly gave her bad advice, isolated her from the rest of the faculty in her department by moving her to a different building, and circulated rumors that she had committed academic fraud, all in a "quest to scuttle [her] career." After a hearing on her application for tenure, the committee reviewing Dr. Whiting's application recommended that she be promoted to associate professor, but denied her tenure and told her to wait for one (1) more year to apply again. As earlier stated, the Mississippi Supreme Court dealt with this case as a tortious breach of contract, but without much guidance for its approach.

This court finds *Kennedy v. Jefferson Cty., Miss. ex rel. Bd. of Sup'rs* provides some guidance. In *Kennedy*, the plaintiff worked as a hospital administrator for one hospital, and as a consultant for another hospital. During the course of his duties at his hospital administrator job, he terminated a contract with a vendor, who happened to be the son-in-law of a councilman for the Jefferson County Mississippi Board of Supervisors. Shortly thereafter, the Hospital Board terminated the plaintiff's employment contract without notice. The hospital produced evidence that it had terminated the plaintiff for insubordination.

> [The plaintiff] sent a notice of claim because he also made tort claims in his complaint. That he was terminated without cause or notice speaks directly to the breach element, which is common to both claims. The omission of the goal and the animus of Guice against Kennedy are insufficient to convert this claim into a tortious one. Although these weigh in favor of such a determination, [the Jefferson County Councilman] had no direct ability to terminate Kennedy's contract, and it is a legal issue as to whether the Hospital Board's "goal" to terminate him was unlawful. The Court finds that [the plaintiff's] claim sounds only in contract.

No. 5:13-CV-226-DCB-MTP, 2015 WL 4251070, at *12 (S.D. Miss. July 13, 2015). To establish a tortious breach of contract courts have generally required more evidence than the parties have shown this court.

JSU asserts that Coach Taylor alleged a tortious breach of contract theory as shown by her pleadings: that JSU "knowingly, willingly, and intentionally" breached its employment contract with her[17]; that JSU "dispatched [an] audit [of] the Women's Basketball Program … for the clear purpose of terminating [her contract]"[18]; and that the reasons provided for terminating Coach Taylor's employment contract "were simply [JSU's] attempt to divert attention from [its] wrongful actions."[19] Thus, says JSU, Coach Taylor's breach of contract claim was really a tortious breach of contract claim in other clothing.

This court is unpersuaded by JSU's arguments that Coach Taylor alleged and pursued a tortious breach of contract cause of action. The facts, as found by the jury, are that JSU breached its contract with Coach Taylor[20]. Coach Taylor urges this court to find that, despite her allegation of intentional and willful conduct to breach the contract, she did not intend to pursue a claim for tortious breach of contract. This court is persuaded to agree with Coach Taylor, who never sought punitive damages in this lawsuit, which she would have done had she been pursuing a tortious breach of contract action. Accordingly, this court finds that JSU is not due a new trial based on this court's submission of the breach of contract claim to the jury.

---

[17] [Docket no. 1, ¶ 57].

[18] [Docket no. 1, ¶ 22].

[19] [Docket no. 1, ¶ 28].

[20] The pretrial order in this lawsuit shows that the parties disputed whether JSU breached the contract. ("If Plaintiff had a valid and enforceable contract with Defendant, did Defendant breach its contract with Plaintiff?" [Docket no. 54, P. 3, ¶ 9(b)(6), *RESTRICTED*]). The parties, however, did not include a "Tortious Breach of Contract" claim in the pretrial order that they signed and submitted, that this court signed and entered on the record. [Docket no. 54 * RESTRICTED*]. JSU aggrieved at the jury's finding, objected both orally and in writing by requesting a new trial contending that the evidence did not support a finding that it had breached the contract.

v.      Breach of Contract Jury Instruction

JSU says that it was due a jury instruction on the breach of contract claim that stated: "In deciding whether [JSU] was justified in its decision to terminate [Coach Taylor], you may not consider [Coach Taylor's] length of employment or [JSU's] failure to discover [Coach Taylor's] misconduct sooner. You also must not consider whether [JSU] has tolerated similar misconduct by other employees." JSU relies on *Hoffman v. Board of Trustees*, 567 So.2d 838 (Miss. 1990) as its basis for the requested jury instruction. As discussed *supra*, *Hoffman* stands for the proposition of law that an employer may rely on an employee's own misconduct to terminate that employee's employment, even where the employer tolerates the misconduct for a period of time. JSU's requested jury instruction does not encompass the conduct contemplated by *Hoffman*.

Moreover, the requested instruction is overbroad. As submitted, the instruction invades the province of the jury by instructing the jury that Coach Taylor had indulged sooner in misconduct and further, that other employees similarly had behaved with misconduct. The parties had not stipulated as to this twin allegation of misconduct and whether there was such was a jury question. Accordingly, the requested instruction was improper.

This court was not persuaded by JSU's arguments at the time it requested the jury instruction and is not convinced now that JSU should have been granted the requested instruction. This court, therefore, finds that JSU is not due relief based on the requested jury instruction.

vi.      Invasion of Privacy

JSU next claims this court committed error in finding that JSU was liable for invasion of privacy[21]. The tort of invasion of privacy is comprised of four distinct and separate sub-torts which

---

[21] Coach Taylor alleged during this litigation that JSU released parts of her employment record and emails regarding the termination of her contract to *The Clarion-Ledger* who then publicly disclosed the same. This court, in its order dated August 1, 2014, listed the documents which Coach Taylor says should not have been released:

are: intentional intrusion on the solitude or seclusion of another; appropriation of another's identity for an unpermitted use; public disclosure of private facts; and holding another in a false light to the public. *See Candebat v. Flanagan*, 487 So.2d 207, 209 (Miss. 1986). In the lawsuit at bar, Coach Taylor sought damages under the public disclosure of private facts, a sub-tort of invasion of privacy.

JSU campaigns that to prove a *prima facie* case of invasion of privacy – public disclosure of private facts – this court had to find that: 1. JSU publicly provided private facts; 2. that the release of those private facts would be highly offensive to a reasonable person; and 3. that those private facts were not a legitimate concern to the public. *See Young v. Jackson*, 572 So. 2d 378 (Miss. 1990).[22] JSU challenges all three elements of the *prima facie* case.

---

1.  An email, dated March 30, 2011, from Coach Taylor to the President of JSU, Carolyn Myers ("President Myers"). This email requested a meeting with President Myers to discuss unfair treatment of the women's basketball program at JSU. Coach Taylor explained that she already had met with both Interim Athletic Director Robert Walker ("Walker") and Assistant Athletic Director Adrienne Swinney regarding the topic. Coach Taylor stated that she did not want to file a Title IX gender equality complaint against JSU, and asked President Myers to take action.

2.  An email, dated March 31, 2011, from Coach Taylor to Walker regarding a breach of Coach Taylor's employment contract. Coach Taylor contended that Walker had violated her contract when he had denied her request to attend a coaches' convention.

3.  A letter, dated April 1, 2011, from President Myers regarding Coach Taylor's Title IX complaint of unfair treatment. President Myers informed Coach Taylor, inter alia, that "[a]ppropriate planning on your part as a seasoned professional could have and should have avoided this situation."

4.  A letter, dated April 8, 2011, from Walker to Coach Taylor. The letter informed Coach Taylor that she was being placed on administrative leave, and she was relieved of all duties pending an investigation into "recent allegations of professional misconduct." Walker informed Coach Taylor that she was "strictly prohibited from any contact with University personnel, including coaching staff and students until further notice."

5.  An agenda, dated May 13, 2011, which outlined the allegations and alleged investigative discoveries against Coach Taylor. The agenda contained references to sexual orientation harassment, emotional and verbal abuse, and misappropriation of funds.

6.  A personnel record, dated May 20, 2011, in which Walker notified Coach Taylor of JSU's intent to terminate her for the following reasons: (1) sexual/gender stereotyping; (2) emotional and verbal abuse; (3) violation of per diem policy; (4) violation of travel and reimbursement policy; (5) misappropriation of university funds; (6) coercing students to change class schedules; (7) and threats of punitive outcomes for failure to keep athletic obligations. Walker also informed Coach Taylor that she had seven (7) days to request a hearing.

[Docket no. 64, PP. 6-7].

[22] "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."

JSU says that Coach Taylor presented no evidence of the release of private facts as contemplated by the relevant jurisprudence. JSU cites two (2) cases where courts found that parties had released private facts based on the release of medical records or school records.[23] According to JSU, the "released facts" merely involved allegations against Coach Taylor for misconduct, allegations which ultimately led JSU to terminate her employment contract early.

JSU asserts further that it (JSU) did not actually "release" the private facts publicly; rather, an independent organization did so, The Clarion-Ledger Newspaper. JSU urges this court to find that after The Clarion-Ledger filed a public records request, JSU simply responded in accordance with its duties under the authority of Miss. Code § 25-61-1 *et seq*, the Mississippi Public Records Act (discussed further *infra*). Thus, says JSU, it did not release records to the public, but disclosed those matters to a third party, and this third party disclosed the information to the public at large.

JSU's position has no merit here:

> [I]t is not an invasion of the right of privacy, within the rule stated in this [opinion], to communicate a fact concerning the plaintiff's private life to a single person or even a small group of persons. On the other hand, any publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication. [*Williamson Ex Rel. Williamson v. Keith*,] 786 So.2d [390,] 396 [(Miss. 2001)] (citing Restatement (Second) of Torts § 652D cert. A (1977)).

*Ekugwum v. City of Jackson, Miss.*, 2010 WL 1490247, at *4 (S.D. Miss. Apr. 13, 2010). This court finds that by disclosing the identified information to The Clarion-Ledger, JSU should have reasonably foreseen that The Clarion-Ledger would publish that identified information. This court,

Young v. Jackson, 572 So. 2d 378, 382 (Miss. 1990).
[23] *Williamson v. Keith*, 786 So.2d 390 (Miss. 2001) and *Allen v. Allen*, 907 So.2d 300 (Miss. 2005).

therefore, finds that JSU's argument is myopic and this court will not overturn the judgment herein on this basis.

JSU also says that the information provided to The Clarion Ledger does not qualify as information which would be "highly offensive to a reasonable person" under Mississippi jurisprudence. JSU cites *Plaxico v. Michael*, 735 So.2d 1036 (Miss. 1999) in support of its argument. In *Plaxico* a non-custodial father (Michael) rented property he owned to his ex-wife, who was also the custodian of his daughter. Michael subsequently learned of a homosexual affair between his ex-wife and her roommate. Michael filed for custody, citing a sexual relationship occurring in the home where his daughter lived while the child's custodian was not married to her sexual partner. During the course of the litigation in *Plaxico*, Michael went to the cabin, observed his ex-wife and Plaxico having sexual intercourse through a window, returned to his vehicle to retrieve a camera, and then took pictures of Plaxico in a seminude state through the window. Plaxico, aggrieved, filed a lawsuit alleging invasion of privacy under the sub-tort of intentional intrusion upon the solitude or seclusion of another. The trial court dismissed her action and she appealed.

The Mississippi Supreme Court found that a parent was within his or her rights to protect the interests of his or her child and that Plaxico had not proven that "this conduct [was] highly offensive to the ordinary person which would cause the reasonable person to object."[24] *Id* at 1040. The *Plaxico* court stated that:

> to recover for an invasion of privacy, a plaintiff must meet a heavy burden of showing a substantial interference with his seclusion of a kind that "'would be

---

[24] The Mississippi Supreme Court partially based its findings on the idea that:

> No one would dispute that parents have a predominant and primary interest in the nurture and care of their children. *Ethredge v. Yawn*, 605 So. 2d 761, 764 (Miss. 1992). In child custody matters the best interest of the child is the polestar consideration. *Mercier v. Mercier*, 717 So. 2d 304, 306 (Miss. 1998).

*Plaxico* at 1039.

highly offensive to the ordinary, reasonable man, as the result of conduct to which the reasonable man would strongly object.'" *Id.* (*quoting Restatement Second of Torts*, § 652B, comt. d (1977)). Further, the plaintiff must show some bad faith or utterly reckless prying to recover on an invasion of privacy cause of action. 487 So. 2d at 209 (*citing Wilson v. Retail Credit Co.*, 325 F. Supp. 460, 467 (S.D. Miss. 1971), aff'd, 457 F.2d 1406 (5th Cir. 1972)).

*Id* at 1039. Thus, this court finds that *Plaxico* is not a valid compass to guide this court's decision.

This court is persuaded, as it was when it issued its bench opinion on this very issue, that the actions of JSU in releasing emails and personnel file information to the Clarion-Ledger would be "highly offensive to the ordinary person." Accordingly, this court finds no basis to overturn its previous decision on this ground either.

JSU also asks this court to overturn its previous determination of liability against it because, according to JSU, Coach Taylor is a public figure and, therefore, the decision to terminate her contract was a "legitimate public concern." Coach Taylor is strangely silent on this point, but this court is not convinced by this argument either.

JSU cites *Ekugwum v. City of Jackson, Miss.*, 2010 WL 1490247 (S.D. Miss. Apr. 13, 2010) to stand for the proposition that Coach Taylor is a public figure. Again, Coach Taylor does not address this argument in her responsive brief.

In *Ekugwum*, United States District Court Judge Daniel P. Jordan III determined that the plaintiff had not presented sufficient evidence to overcome a Rule 56 challenge based on the release of information, not, about whether the plaintiff was a public figure. This court can find nothing in that case in which that court addressed the "legitimate public concern" prong of the public disclosure of private facts except:

In *Young v. Jackson*, the Mississippi Supreme Court adopted the Restatement (Second) of Torts § 652D as to public disclosure of private facts and observed the following: One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter

publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public. 572 So.2d 378, 382 (Miss.1990).

*Ekugwum v. City of Jackson, Miss.*, 2010 WL 1490247, at *3–4 (S.D. Miss. Apr. 13, 2010). This court, accordingly, is unpersuaded to find in JSU's favor and overturn its previous opinion on this ground.

Further, this court is persuaded, as it discussed *supra*, that JSU waived this argument when it failed to include a defense that Coach Taylor was a "public figure" in the pretrial order that JSU signed which dictated the course of these proceedings. [Docket no. 54]. Finally, this court in not persuaded that Coach Taylor's image as a "public figure", even if true, would entitle JSU to invade her privacy by providing unsubstantiated, embarrassing allegations about her to the public at large. Other than JSU's excuse that it furnished this information in response to The Clarion-Ledger's request under the Mississippi Public Records Act[25] (hereinafter referred to as "MPRA"), JSU did not offer any credible explanation for its actions while even the MPRA-based excuse was insufficient. The facts released were not, at that stage, a "legitimate" concern of the public.

JSU lastly campaigns that the Mississippi Public Records Act does not provide a private cause of action, despite this court's earlier ruling that the MPRA did create a private cause of action. The MPRA, according to JSU, would shield JSU from liability because it released information pursuant to a statutorily authorized records release.[26] Coach Taylor opposes this to say that she never raised the issue of JSU releasing records under the authority of the MPRA, to which

---

[25] "This chapter shall be known and may be cited as the "Mississippi Public Records Act of 1983." It is the policy of the Legislature that public records must be available for inspection by any person unless otherwise provided by this act [Laws 1996, Ch. 453]. Furthermore, providing access to public records is a duty of each public body and automation of public records must not erode the right of access to those records. As each agency increases its use of and dependence on electronic record keeping, each agency must ensure reasonable access to records electronically maintained, subject to the rules of records retention."

Miss. Code. Ann. § 25-61-1 (West) *et seq.*

[26] The MPRA expressly excludes several categories of government documents as not releasable: personnel records and applications for employment in the possession of a public body; employment examination questions and answers in the possession of a public body; and letters of recommendation in the possession of a public body.

JSU responds that she did in her complaint.[27] This court has already addressed JSU's arguments in its bench opinion dated August 1, 2014, and JSU has not provided this court with any jurisprudence that it has not already considered. Accordingly, JSU's motion to set aside this court's previous opinion based on this ground fails as well.

In its order dated August 1, 2014, this court has already addressed JSU's contentions and JSU does not offer this court any new jurisprudence that might convince this court to overturn its previous opinion. [Docket no. 64]. JSU's challenge to the *prima facie* case against it fails because this court found evidence of all three elements: 1. JSU publicly provided private facts about Coach Taylor; 2. the release of those private facts would be highly offensive to a reasonable person; and 3. those private facts were not a legitimate concern to the public. *See Young v. Jackson*, 572 So. 2d 378 (Miss. 1990). This court, therefore, denies JSU's motion to set aside its previous order finding JSU liable for invasion of privacy.

vii. Remittitur

JSU next asks this court to reduce its previous award of $200,000 to either nothing or a smaller amount. JSU argues that Coach Taylor never produced competent evidence of damages on her invasion of privacy claims. Coach Taylor, contrariwise, argues that this court, in its previous opinion [Docket no. 64] addressed these same arguments.

This court addressed the issue of remittitur in its prior opinion when it said:

In cases of remittitur, the court is often called upon to consider amounts awarded in similar cases. *See Tureaud v. Grambling State Univ.*, 294 Fed. Appx. 909, 916 (5th Cir. 2008). Although this case does not involve remittitur, the court has reviewed past cases to determine damages.

[Docket no. 64, P. 18].

---

[27] "66. Defendant, acting by and through its agents and employees, did knowingly, willfully, and intentionally release confidential documents in violation of both University policy and the Mississippi Public Records Act." [Docket no. 1, ¶ 66].

As this court stated in its previous opinion, "[o]ne who has established a cause of action for invasion of privacy is entitled to recover damages for [her] mental distress proved to have been suffered if it is a kind that normally results from such an invasion." [Docket no. 64] *Citing Candebat v. Flanagan*, 487 So.2d 207, 212 (Miss. 1986).

JSU correctly states "[I]t is the plaintiff who bears the burden of proof as to the amount of damages[.]" *See J & B Entertainment v. City of Jackson, Miss.,* 720 F.Supp.2d 757, 764 (S.D. Miss. 2010). JSU is incorrect, however, that Coach Taylor failed to produce any evidence of her damages. Coach Taylor herself testified that she had mental health disturbances as a result of the invasion of her privacy by the online publication of the private facts released by JSU, not just her fears over termination as asserted by JSU. Coach Taylor also introduced unrefuted evidence in the form of witness testimony that she had occasioned mental disturbances as a result of the invasion of privacy.

"[A] plaintiff must [] prove that such [mental distress] damages were reasonably foreseeable." *Sumler v. East Ford, Inc.,* 915 So.2d 1081, 1089 (Miss. Ct. App. 2005). It was foreseeable that the story published by The Clarion Ledger would have an emotional impact on Coach Taylor. As JSU indicates, "[i]t is not enough that a plaintiff dislike a defendant's acts, a plaintiff must show that a defendant intentionally and maliciously sought to do the plaintiff harm." *Id*. This court has already found in its previous order that JSU acted "intentionally and maliciously" by releasing Coach Taylor's private facts for the world to see, and this court is not inclined to overturn its previous ruling.

JSU then says that even if this court were to allow its previous award of $200,000 to stand, it is due to be remitted. This court previously reviewed the cases submitted by JSU and was not inclined then, nor now, to reduce the award from $200,000. This court, in its previous order,

specifically looked at cases[28] of remitter for invasion of privacy claims and, as a result, arrived at its figure of $200,000. [Docket no. 64, P. 18-19]. This court will not reduce Coach Taylor's award from $200,000.

viii.    Additional Errors

JSU next contends that this court made additional and cumulative errors which combined to deny it a fair trial: the court's questioning of witnesses in front of the jury; and allowing Coach Taylor to discuss JSU's refusal to arbitrate before the jury.

"A trial court [] abuses its discretion in examining witnesses if the questioning demonstrates bias or partiality." *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994). According to JSU, this court "repeatedly questioned [its] witnesses in a way that suggested the Court [*sic*] believed them not to be credible [*sic*]." Coach Taylor says that this court had the prerogative to question witnesses to determine the viability of witnesses. JSU responded by stating that this court could have exercised its prerogative to examine witnesses outside of the presence of the jury. JSU does not indicate to this court which questions of the court were improper to ask of the witnesses, nor does it indicate how those questions were improper, except to say that the court should not have asked questions of the witnesses.

In its memorandum brief in support of its motion for a new trial, JSU states, "[t]hough Jackson State recognizes that there is no *per se* rule forbidding the Court from examining witnesses, it is error for a trial court to do so in a manner that leads the jury to believe that the Court has a predisposition that one party should prevail over the other party." [Docket no. 68, P. 15]. For support, JSU cites *Rodriguez v. Riddell Sports*, 242 F.3d 567 (5th Cir. 2011). This court, in reviewing that case, notes that *Rodriguez* expressly states that a court may question witnesses

---

[28] *Parks v. Collins*, 761 F.2d 1101 (5th Cir. 1984) and *Tureaud v. Grambling State Univ.* 294 Fed. App'x. 909 (5th Cir. 2008).

in accordance with the Federal Rules of Evidence. Therefore, this court has decided that it will

quote the text of *Rodriguez* in this opinion:

> "A trial judge has wide discretion over the 'tone and tempo' of a trial and may elicit further information from a witness if he believes it would benefit the jury." *United States v. Rodriguez*, 835 F.2d 1090, 1094 (5th Cir. 1988) (quoting *United States v. Adkins*, 741 F.2d 744, 747 (5th Cir. 1984)). Federal Rule of Evidence 614(b) allows the court to "interrogate witnesses, whether called by itself or by a party." The court "'may question witnesses and elicit facts not yet adduced or clarify those previously presented.'" *United States v. Williams*, 809 F.2d 1072, 1087 (5th Cir. 1987) (quoting *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979)). "A judge's questions must be for the purpose of aiding the jury in understanding the testimony." *United States v. Saenz*, 134 F.3d 697, 702 (1998) (citing *United States v. Bermea*, 30 F.3d 1539, 1570 (5th Cir. 1994)). "However, the trial court's efforts to move the trial along may not come at the cost of 'strict impartiality.'" *Id.* (citing *United States v. Davis*, 752 F.2d 963, 974 (5th Cir. 1985)).

> "In reviewing a claim that the trial court appeared partial, this court must 'determine whether the judge's behavior was so prejudicial that it denied the [defendant] a fair, as opposed to a perfect, trial.'" *Id.* (quoting *Williams*, 809 F.2d at 1086 (quoting *United States v. Pisani*, 773 F.2d 397, 402 (2d Cir. 1985))). "To rise to the level of constitutional error, the district judge's actions, viewed as a whole, must amount to an intervention that could have led the jury to a predisposition of guilt by improperly confusing the functions of judge and prosecutor." *Bermea*, 30 F.3d at 1569; *see also United States v. Mizell*, 88 F.3d 288, 296 (5th Cir. 1996).

> "Our review of the trial court's actions must be based on the entire trial record." *Saenz*, 134 F.3d at 702 (citing *United States v. Carpenter*, 776 F.2d 1291, 1294 (5th Cir. 1985)). "A trial judge's comments or questions are placed in the proper context by viewing the 'totality of the circumstances, considering factors such as the context of the remark, the person to whom it is directed, and the presence of curative instructions.'" *Id.* (quoting *United States v. Lance*, 853 F.2d 1177, 1182 (5th Cir. 1988)). "The totality of the circumstances must show that the trial judge's intervention was 'quantitatively and qualitatively substantial.'" *Id.* (quoting *Bermea*, 30 F.3d at 1569).

*Rodriguez v. Riddell Sports, Inc.*, 242 F.3d 567, 579 (5th Cir. 2001).

This court is unpersuaded that it conducted an improper examination of any of the

witnesses. The sole purpose of the court's examining of witnesses in this matter was to aid the jury

in understanding the testimony of witnesses. This court also gave a curative instruction to the jury,

that the jury should not place any undue weight on the questions the court propounded to witnesses. JSU is not due relief on this ground either.

JSU's final argument is that this court erred in allowing Coach Taylor to mention, in the presence of the jury, JSU's refusal to arbitrate. Coach Taylor argues, in response, that JSU's refusal to arbitrate was probative because she, Coach Taylor, had filed claims for violations of Title IX and Title VII, requiring evidence showing how JSU had treated Coach Taylor from the initial notice of her termination through the denial of arbitration. JSU cites *Anderson v. Louisiana & Arkansas Railway Co.*, 457 F.2d 784 (5th Cir. 1972) to support its position that the court allowing Coach Taylor to present evidence of JSU's refusal to arbitrate was more prejudicial than probative. This court is not persuaded.

In *Anderson v. Louisiana & Arkansas Railway Co.* the plaintiff was an employee of the defendant-railroad who was involved in a fight with another employee, the train's engineer, who had brandished a firearm during the altercation. The plaintiff suffered a stroke and brought a civil action under the authority of the Federal Employers Liability Act[29]. During the course of the trial, the trial court allowed the plaintiff to introduce evidence that the engineer had not been terminated

---

[29] Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this Act be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this Act and of an Act entitled "An Act relating to the liability of common carriers by railroad to their employees in certain cases" (approved April 22, 1908) [45 USCS §§ 51 et seq.] as the same has been or may hereafter be amended.

45 U.S.C.S. § 51

or disciplined, nor had the defendant railroad prevented the engineer from subsequently bringing his firearm on the train with him. The Fifth Circuit Court of Appeals found that "[t]he evidence of the conduct of the railroad subsequent to the incident from which the injury arose had no relevancy on the question of liability or of damages." 457 F.2d 784, 785 (5th Cir. 1972).

In 1972, the same year that *Anderson* was announced, the first proposed Federal Rules of Evidence were published by the Advisory Committee. As part of those rules, the Advisory Committee penned Rule 407 – Subsequent Remedial Measures. Rule 407 reads:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> • negligence;
> • culpable conduct;
> • a defect in a product or its design; or
> • a need for a warning or instruction.
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407. This court is persuaded that *Anderson* is a common law subsequent remedial measures case. In the lawsuit *sub judice* JSU's refusal to arbitrate was not introduced to prove culpable conduct which led to the injury, but conduct which shows the animus that had developed between JSU and Coach Taylor. This court is further persuaded that because Coach Taylor placed JSU's conduct in terminating her contract at issue, JSU's refusal to arbitrate is probative of its mindset in pursuing the course of action that it did in terminating Coach Taylor. Accordingly, JSU is not due relief on this ground either.

### ix.    Conclusion **[Docket no. 67]**

This court, having addressed all of JSU's contentions in its Joint Motion for Judgment as a Matter of Law, New Trial, or Remittitur **[Docket no. 67]** is persuaded that JSU waived its arguments regarding the "tortious breach of contract" issue and the affirmative defense of whether

Coach Taylor was a "public figure." This court is further unpersuaded that JSU has made the requisite showing under either Rule 50(b) or Rule 59(a) of the Federal Rules of Civil Procedure and all the grounds that it asserts. Accordingly, this court finds that JSU's motion must be DENIED.

b. *Motion for a New Trial* **[Docket no. 70]**

In her Motion for a New Trial **[Docket no. 70]** Coach Taylor asks this court to grant her a new trial on her Title IX retaliation claim. For cause, Coach Taylor claims this court did not provide the proper jury instruction on Title IX retaliation, that of "but for" causation instead of "the sole or only reason" causation standard relied upon by this court. Coach Taylor claims this court applied the wrong standard and that the Fifth Circuit precedent relied upon by this court has been overturned by a subsequent United States Supreme Court decision. This court is unpersuaded and for the following reasons DENIES the motion.

i.    Standard of Review

Coach Taylor filed her motion asking this court to exercise its authority under Rule 59 of the Federal Rules of Civil Procedure. The standard for review in Coach Taylor's motion for a new trial is the same as the standard stated in Section IV. A. i. *supra*.

ii.    *Lowery*

Coach Taylor asks this court for a new trial based on an allegedly improper jury instruction. Coach Taylor argues that this court should have given a "but for" causation instruction on her Title IX retaliation claim. [Docket no. 70]. Coach Taylor urges this court to find that the Fifth Circuit precedent upon which it relied in giving its instruction to the jury, *Lowery v. Tex. A&M Univ. Sys.*, 171 F.3d 242 (5th Cir. 1997), has been overruled by the United States Supreme Court in *Jackson v. Birmingham Bd. of Edu.*, 544 U.S. 167 (2005). Coach Taylor cites two cases released

subsequently to *Jackson* for support: *Gross v. FBL Fin. Svs., Inc.*, 557 U.S. 167 (2009); and *Univ. Tex. SW Med. Cntr. v. Nassar*, 554 U.S. 47 (2007).

JSU responded to Coach Taylor's Motion for New Trial, arguing that *Lowery* remains binding Fifth Circuit precedent. According to JSU, *Jackson* interpreted a Title VII claim, based on a statutory grant of a private cause of action. In *Lowery*, argues JSU, the Fifth Circuit found that Title IX "implies a private right of action for retaliation, narrowly tailored to the claims of employees who suffer unlawful retaliation solely as a consequence of complaints alleging noncompliance with the substantive provisions of [T]itle IX." *Lowrey*, 117 F.3d at 254 (5th Cir. 1997). This court is persuaded that the two cases are different in kind and that *Lowery* remains binding Fifth Circuit precedent.

Coach Taylor's ancillary argument that both *Gross* and *Nassar* support its position is not well-taken. Neither case involves a Title IX claim: *Gross* is an AEDA case based on a statutory grant of a private cause of action; and *Nassar* is a Title VII case involving a statutory grant of a private cause of action. *Lowery* established a judicially created private cause of action based on a statute, in which the Fifth Circuit found the "sole or only reason" causation standard was the standard implied by the statute.

Accordingly, this court is persuaded that Coach Taylor's Motion for a New Trial **[Docket no. 70]** is not well-taken and must be DENIED.

c. *Motion to Stay Proceedings Regarding Plaintiff's Bill of Costs **[Docket no. 74]***

JSU, in its Motion to Stay Proceedings Regarding Plaintiff's Bill of Costs **[Docket no. 74]** asks this court to withhold its ruling on Coach Taylor's Bill of Costs [Docket no. 69]. JSU's sole reason for its request is that this court should rule on the outstanding post-trial motions that are encompassed in this memorandum opinion. This court has now ruled on those

motions and finds JSU's Motion to Stay Proceedings Regarding Plaintiff's Bill of Costs **[Docket no. 74]** MOOT and DENIES it as such.

## V. CONCLUSION

This court has reviewed the post-trial motions filed by both parties and finds that all motions must be DENIED for the reasons stated *supra*. Neither party has persuaded this court that it is due either a new trial under Rule 59 of the Federal Rules of Civil Procedure or a Judgment as a Matter of Law under Rule 50 of the Federal Rules of Civil Procedure.

IT IS, THEREFORE, ORDERED that Jackson State University's Joint Motion for Judgment as a Matter of Law **[Docket no. 67]** is hereby **DENIED**.

IT IS FURTHER ORDERED that Taylor-Travis's Motion for New Trial **[Docket no. 70]** is hereby **DENIED**.

IT IS FINALLY ORDERED that Jackson State University's Motion to Stay Proceedings Regarding Plaintiff's Bill of Costs **[Docket no. 74]** is **MOOT** and **DENIED** as such and the court will rule expeditiously on the Plaintiff's Bill of Costs.

**SO ORDERED AND ADJUDGED this the 22nd day of December, 2017.**

**s/ HENRY T. WINGATE**

**UNITED STATES DISTRICT COURT JUDGE**